### ESTATE AND GUARDIANSHIP OF IRMA LINDEN.

No. 8767—Dec. 12, 1878.

CUSTODY OF THE PERSON OF A MINOR.—The father is entitled to such custody, as against any person other than the mother; subject, however, to the paramount duty of the Court to consider in awarding such custody, whether it will be " for the best interest of the child in respect to its temporal and its mental and moral welfare."

A father, by leaving a child for any period in the care and custody of another, does not, by that act alone, forfeit his right to re-enter upon his right and duty.

In granting letters to the father, the Court may incorporate in the order such stipulations and directions binding the father in the matter of the personal custody of the child, as may befit its temporal and moral welfare.

An unsettled mode of life and a harsh disposition are matters to be considered in the light of objections to the granting the custody of a minor to a father when a happier mode of disposing of the child offers itself.

Construing sections, C. C., 197, 213, 246, 251; C. C. P., 1751, 1755.

*M. C. Blake, M. A. Edmonds,* and *M. B. Blake,* attorneys for Mr. and Mrs. Barker.

*Warren Olney* and *F. E. Sutherland,* attorneys for Mr. Linden.

By the COURT:   The facts are as follows:

Mr. Linden is a native of Germany; he is by calling a music teacher, and is now about 46 years of age.   About 25 years ago, he came to this State, and after remaining some time went to Australia, where he married, and the three elder children hereinafter named were born.   From Australia he came to San Francisco, bringing with him his three children, and engaged here in his profession.

In June, 1870, he married Miss Anna H. Giles, a resident of this city, who was the only sister of the petitioner, Mrs. Barker.

Mr. and Mrs. Linden resided together in this city until August, 1871, when Mrs. Linden went to Germany, taking with her the three children by the former marriage, Mr. Linden remaining here.

The child Irma was born in Germany, February 23, 1872, and Mrs. Linden died March 5th, following.   Before her death, Mrs. Linden requested that in the event of her death her child should be placed with her sister, Mrs. Barker.

In November, 1872, the child reached this city, and was met by Mr. Linden and Mrs. Barker, and was, with the consent of Mr. Linden, taken by Mrs. Barker to her own home, where she has ever since remained, under the care of Mrs. Barker.   Mrs. Barker received from Mr. Linden various sums for her expenses, until about two years ago, when she declined to receive any further sums; but several hundred dollars were placed in savings banks for the child.

About June, 1876, Mr. Linden married the third time, and with his wife went to Germany; they returned in December following, since which time they have not resided together.   He is at present unmarried.   In February, 1877, Mr. Linden, with his eldest daughter, left this city and went to Australia, and returned therefrom in April, 1878.

The family of Mr. and Mrs. Barker has consisted of themselves, a son about a year older than Irma, Irma, and a servant.   Mr. Barker is in comfortable financial circumstances; and he and his wife are unexceptionable people. The care Mrs. Barker has bestowed upon Irma has been unremitting; most excellent people are unqualified in their commendations of that care.   Irma has never known any other mother, and is very much attached to Mrs. Barker. She is a very bright, beautiful child.   Indeed, no question was made on the trial as to the prudence and care of Mrs. Barker in the physical and moral training of Irma.   During the times that Mr. Linden was in this city, he had unlimited access to his child and to the house of the Barkers.   His visits were usually about once a week.

Before going to Australia in February, 1877, Mr. Linden had an interview with Mrs. Barker, in which she reminded him of a promise he had made to her that the child should remain with her, and asked him to put it in writing; he declined to do so, but told her that he would not take the child from her, and that she could remain with her as long as both lived.

It was on this occasion that Mrs. Barker declined to receive any further aid in Irma's support.   After his return from Australia in April, 1878, Mr. Linden called upon the Barkers and saw the child.   Prior to that time the relations of the father and uncle and aunt had been apparently of the most friendly kind, and he had acquiesced fully in their treatment of the child.

On that visit, the child did not meet him as cordially and enthusiastically as he had expected, and he, believing that the Barkers were endeavoring to wean the child from him, then determined to remove her from their care; but this resolution was not then communicated to them.

He continued to visit them from time to time, until, about the middle of October last past, he announced to them his determination to return to Australia and take the child with him, and demanded that they have her ready to sail with him in a steamer of a near day, in which, he said, berths were engaged.

They refused to deliver the child, and filed their petition Oct. 28th.

The other children of Mr. Linden are, Charles, aged 19 years, at present in business at the South Sea Islands; Henry, aged 18 years, now and for some years at school in Germany; and Ottilie, aged 16 years, now boarding in this city.   Mr. Linden has continued to follow his profession as teacher of music, with varied success as to pecuniary results, but sufficient to provide support for those dependent upon him.   During the period since his first marriage he has kept house only about twenty months; the remainder of his life has been passed in hotels and boarding houses.

Since Irma's mother went to Germany, in 1871, none of his children have lived with him; he keeping them at boarding schools or elsewhere, and living by himself.   He is of a nervous and irritable temperament and harsh disposition; not to such an extent, however, as to render him unfit to perform the duties of a father.

Said minor had no guardian heretofore appointed by will or deed or otherwise.

Petitioners make the following points:

1—That Mr. Linden has voluntarily relinquished the care and custody of the child and abandoned his parental rights, and cannot now be heard to claim her.

2—That he is of such a nervous and irritable temperament, ungovernable temper, and harsh disposition, that he is unfit to assume the control of the child.

3—That the moral, physical, and mental well-being of the child requires that she be permitted to remain with them.

Referring to the first point, I very much doubt if a parent can be said to *relinquish* his position as such, except in the two cases of adoption and apprenticeship, the rules controlling which cases do not apply to this case.   He may temporarily part with the custody of a child, and he may surrender his right to its earnings; but he cannot discharge himself of the duty he owes (to the child) of protection and maintenance.   The good of the child requires that there be some person who is legally bound to it.   I have no doubt that Mr. Linden, desiring to avail himself of Mrs. Barker's

care and affection for the child, in order to secure a good home for it, permitted her to believe that it would remain with her; that his little child, on his return from Australia, did not understand how enthusiastically he wished to be received by it; that he was annoyed, and determined to remove it; that he was actuated rather by caprice than by a tender, fatherly feeling; yet I do not believe that there has been a relinquishment of parental duties. If Mrs. Barker had neglected the child, the father would certainly have had the right, as it would have been his duty, to investigate and remedy such neglect.

As to the temper of Mr. Linden, it is true he is irritable and harsh; but he has not alienated his eldest daughter, who seems quite attached to him. As to his temper being ungovernable, I think it rather the reverse; witness, the three circumstances testified to, where the persons to whom he was rude were, in two instances, women, and in the other, a harmless, inoffensive man. These selections of objects of rudeness display entire self-control and considerable prudence.

As to the third point, Sec. 246, Civil Code, is as follows:
" In awarding the custody of a minor, or in appointing a general guardian, the Court or officer is to be guided by the following considerations:

1.   By what appears to be for the best interest of the child in respect to its temporal and its mental and moral welfare; and if the child be of a sufficient age to form an intelligent preference, the Court may consider that preference in determining the question.

2.   As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right; but, other things being equal, if the child be of tender years, it should be given to the mother; if it be of an age to require education and preparation for labor and business, then to the father.

3.   Of two persons equally entitled to the custody in other respects, preference is given as follows: 1.—To a parent," etc.

Sec. 1751, Code of Civil Procedure, reads:

"The father of the minor, if living, and in case of his decease, the mother, while she remains unmarried, being themselves respectively competent to transact their own business and not otherwise unsuitable, must be entitled to the guardianship of the minor."

It is not necessary at this time to enter upon a dissertation on the law relating to the alleged prerogatives of a husband and father; his superiority as head of the household; his authority as parent; the exercise of his will as law. It is sufficient that the statutes of this State plainly announce the principles which are to govern a Court in disposing of the custody of minors. The leading, paramount principle is, "what appears to be for the best interest of the child in respect to its temporal and its mental and moral welfare." As between two persons otherwise equally well fitted, a parent should be preferred; because the law presumes that a parent, actuated by love, will render greater service to a child, and teach it the important duties (important to the State as well as to the individual) of filial love and respect.

Apply these principles to the case at bar. Mr. Linden is at present a single man. He has no home, except such as he may temporarily have at a hotel or boarding house. The child Irma has never lived with him, even for a day. He has never had any of his children with him except during the time he lived with Irma's mother. There are no especially tender heart-strings to snap by his living apart from the child now. Irma is now of an age to require especial care, such as a woman only can give. The time from 6 to 16 years of age is the most important in the life of a female. Mr. Linden could not, of course, give his personal attention to her; and his elder daughter, though doubtless a very estimable young lady, refined and accomplished, has scarcely sufficient age or experience to direct and control a young child. Mr. Linden is, himself, entirely unsettled as to his future movements. Before the trial he announced his determination to go to Australia; on the trial he said he did not know where he should be, whether he should remain here or go

abroad.   On the other hand, the Barkers have a comfortable home; they have had Irma six years; she is attached to them and they to her; she knows no home but theirs; their care and management of her have been unexceptionable; if she were to leave them she could gain no better home, temporally, mentally, or morally; while great risks would be run by a change; she would have to part from her present friends and find new associations.   I am of opinion that a child should, so far as possible, have the influences of home life; that the State is interested in having those influences surround and impress its future citizens.   I am, therefore, of opinion that Mr. Linden is not at present so situated as that he can provide for the child as good a home as she has had and now has; it appears to me "for the best interest of the child in respect to its temporal and its mental and moral welfare," that she should remain with the Barkers and be in their custody and under their immediate control and direction.   I am of opinion that Mr. Linden's desire to remove the child from the Barkers came rather from caprice and selfishness, than from parental love and desire for his child's best interests.

Sec. 251, Civil Code, reads:

"In the management and disposition of the person or property committed to him, a guardian may be regulated and controlled by the Court."

Mr. Linden in his petition asks that letters be issued to him, if letters should be adjudged to be necessary.   It is proper that letters of guardianship should issue.   Therefore, he may have thirty days, from this day, within which to elect whether he will take letters, and to take them; such letters to be upon, and to express the following conditions and directions, and the following regulations are given for his management of the person of the child, viz:

That the child, Irma, be not removed by him or any other person from the custody of Mrs. Barker; that Mrs. Barker have the custody, control, and management of the child; that Mr. Linden and his three elder children have the privilege at all seasonable times of visiting Irma; and that

Mr. Linden pay to Mrs. Barker $20 per month for her food and clothing. If Mr. Linden shall omit for said period of thirty days to take out the letters, on the conditions above specified, letters will then issue to the petitioners, Mr. and Mrs. Barker, and contain the direction that they permit Mr. Linden and his elder children to visit Irma at all seasonable times.

In either case, the bond to be given by the person qualifying is fixed at $1,000.

In the meantime, the child will remain, as heretofore, in the custody of Mrs. Barker:

Let an order be drawn accordingly.